UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

UNITED STATES                          CRIMINAL ACTION

VERSUS                                 NO: 10-202

STEVEN EARL HARDRICK                   SECTION: R

## ORDER AND REASONS

Defendant Steven Hardrick moves the Court to suppress cell-site location records that he contends were obtained pursuant to an illegal search. Because the Court finds that law enforcement acted in good faith in obtaining the cell-site location records, it denies defendant's motion.

**I.    BACKGROUND**

**A. Factual Background**

Steven Hardrick is under federal indictment charging him with, *inter alia*, multiple murders, a drug trafficking conspiracy, a conspiracy to posses firearms, carjacking resulting in death, and multiple counts of being a felon in possession of a firearm.[1] Hardrick is now moving to suppress cell-site location information ("CSLI") that police officers obtained on two occasions during the course of their investigation.[2] The Court

---

[1]    R. Doc. 67.

[2]    R. Doc. 118.

JS-10:  00:25

held an evidentiary hearing on the motion on October 5, 2012.[3]
The following is an account of how the police officers obtained
the CSLI.

In 2007, the Federal Bureau of Investigation assisted the
New Orleans Police Department in the investigation of a series of
killings. N.O.P.D. Detective John Duzac investigated Dwayne
Landry's death, and Detective Harold Wischan investigated the
deaths of Brett Jacobs, David Alford, and Howard Lee Pickens.[4]

In October 2007, the detectives researched the victims'
phone records and identified a number that had communicated with
a victim minutes before the victim's murder. The police applied
for subpoenas duces tecum and exigent circumstance forms
requesting subscriber information from Sprint/Nextel pertaining
to the suspect's number. This information identified Robert Hart
as the suspect. After identifying Hart as a suspect, Detective
Wischan applied for an arrest warrant. On October 25, 2007,
Detective Wischan presented a sworn affidavit showing probable
cause, and a magistrate issued the arrest warrant for Hart.[5]

After obtaining the arrest warrant, the police continued to
investigate the victims' and Hart's phone records. This research
revealed two phone numbers that communicated with a victim at

---

[3]     R. Doc. 135.

[4]     R. Doc. 118.

[5]     Gov't Ex. 1.

times close to the victim's homicide. The first number, 504-906-5321, was subscribed to Erica Ortiz,[6] the mother of Hart's child. The police believed that Hart used this phone. The second number, 504-201-9982, was subscribed to Randy Smith, Steven Hardrick's stepfather. The police believed that Steven Hardrick used this phone.[7]

On October 25, 2007, Detective Duzac applied for an Order to Issue Subpoena Duces Tecum from a magistrate directing Sprint/Nextel to provide the N.O.P.D. with the telephone records pertaining to Hardrick's number: 504-201-9982.[8] Detective Duzac requested "an engineering map, showing all cellular-site tower locations, sectors, and orientations," among other information, for the period of September 20, 2007 through October 20, 2007 and extending ten days past the date of the Order.[9] Detective Duzac certified that his investigation "revealed that the said cellular phone was used by the perpetrator to communicate with the victim and direct him to a location where he was fatally shot."[10] The Order was signed by the magistrate and issued on October 25,

---

[6]     Gov't Ex. 2.

[7]     Gov't Ex. 3.

[8]     R. Doc. 118-1.

[9]     *Id.*

[10]    R. Doc. 118-1 at 2.

2007.[11] The magistrate found that the "[a]pplicant has offered specific and articulable facts showing that there are reasonable grounds to believe that the subscriber information . . . is relevant and material to an ongoing criminal investigation."[12] In accordance with the subpoena, Sprint/Nextel disclosed the information to law enforcement. This is the first source of the information that Hardrick moves to suppress.

On December 18, 2007, Detective Wischan applied for subpoenas duces tecum to obtain subscriber information pertaining to Hart's and Hardrick's phone numbers. For Hart's number, he requested the information from September 1, 2007 to November 1, 2007 and extending 10 days past the issuance of the Order.[13] For Hardrick's number, Detective Wischan requested the same information from Sprint/Nextel as Detective Duzac requested on October 25, 2007, only Detective Wischan requested the information from a different time period than Detective Duzac's previous request. Detective Wischan requested the information for the period of October 19, 2007 through December 1, 2007 and extending 10 days past the issuance of the Order.[14] In his applications, Detective Wischan certified that the subscriber and

---

[11]    *Id*.

[12]    R. Doc. 118-1 at 3.

[13]    Gov't Ex. 2; Gov't Ex. 3.

[14]    Gov't Ex. 3.

cell-site location information was relevant and material to the criminal investigation.[15] For Hart's number, Wischan certified that the investigation revealed that Hart had used the telephone to call the victim of the homicide "for the purpose of arranging a drug transaction" and that Hart had "murdered the victim and two other people at the site of the drug transaction."[16] For Hardrick's number, Detective Wischan certified that the investigation revealed that Hardrick had used the phone in the commission of the murders under investigation.[17]

The magistrate signed Detective Wischan's request pertaining to Hart's number and also signed an Order issuing the subpoena duces tecum.[18] For Hardrick's number, the magistrate signed Detective Wischan's request, but the Government was unable to produce the signed Order.[19] Sprint/Nextel disclosed to law enforcement the requested information pertaining to Hardrick's number. This is the second source of the information that Hardrick moves to suppress.

---

[15]    Gov't Ex. 2; Gov't Ex. 3.

[16]    Gov't Ex. 2.

[17]    R. Doc. 118-2 at 2.

[18]    Gov't Ex. 2.

[19]    Gov't Ex. 3.

At the evidentiary hearing the Court received evidence
concerning the existence of the missing Order.[20] Detective
Wischan testified that the magistrate did sign and issue an Order
on December 18, 2007 that in effect extended the time period for
disclosure of information pertaining to Hardrick's number that
had been granted on October 25, 2007. The Government further
provided evidence that after the subpoenas duces tecum were
issued, Detective Wischan sent them to Sprint/Nextel and received
all of the information requested. Hillary Rapson, a subpoena
specialist at Sprint/Nextel, submitted an affidavit attesting
that Sprint/Nextel would not have provided the information
pertaining to Hardrick's phone number "without an order signed by
a judge."[21] The defendant submitted evidence that while searching
for the missing Order, Detective Winston Harbin located an Order
pertaining to the 504-201-9982 number, "but it was not signed by
the judge."[22] The Government countered by raising the possibility
that the unsigned Order was a draft.[23]

The Court finds by a preponderance of the evidence that an
Order was signed for the information requested in the December
18, 2007 subpoena application. This is supported by (1) Detective

---

[20]    R. Doc. 135.

[21]    Gov't Ex. 3.

[22]    R. Doc. 136-2.

[23]    R. Doc. 146.

Wischan's own testimony that he obtained the signed Order, (2) the magistrate's signature on Detective Wischan's request for the Order, (3) Ms. Rapson's affidavit certifying that Sprint/Nextel would not have disclosed the information without an Order signed by a judge, (4) that two similar requests were granted by a magistrate, and by (5) the magistrate's signed Order granting Detective Duzac's request for the same information pertaining to the same 504-201-9982 phone number in October 2007.[24] *See United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974) ("[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence.").[25]

Defendant now moves to suppress CSLI acquired during the investigation.[26] Hardrick's motion to suppress challenges the information acquired by both Detective Duzac and Detective Wischan.[27]

---

[24] R. Doc. 118-1.

[25] At a minimum, the Government has proved by a preponderance of the evidence that Detective Wischan reasonably believed that he was acting pursuant to a signed Order. For the purposes of defendant's motion to suppress, this supports the finding of the detective's objective good faith. *See* discussion *infra*.

[26] R. Doc. 91.

[27] R. Doc. 119.

## B. Historical Cell-Site Location Information ("CSLI")[28]

Cell-phone providers operate a series of "cell-site towers" throughout their coverage area.[29] To make calls, cell phones communicate with a particular cell-site tower that corresponds to the user's location at the time of the call.[30] Records of these communications can indicate the physical location of the user.[31] While the parties dispute the accuracy of the location information that cell-site towers provide, what is settled is that the more cell-site tower locations in a given area, the more precise the location information can be for a user's particular call.[32] The number of cell-site towers in an area may depend on its population; densely populated regions are equipped with more cell-site towers.[33] Cell-phone providers keep records detailing which cell-sites their users' cell phones have communicated with and the times of these communications.[34] Because the information sought in this case relates only to a user's previous calls, the

---

[28]    This background information is based on the materials submitted by the parties and only states those facts that are undisputed.

[29]    R. Doc. 119.

[30]    R. Doc. 118; 119.

[31]    *Id.*

[32]    *Id.*

[33]    R. Doc. 119.

[34]    R. Doc. 118; 119; 118-3.

information is referred to as historical cellular site location information ("CSLI").

**II.  STANDARD**

**A. Fourth Amendment Searches**

Defendant's motion to suppress asserts that the Government obtained CSLI in violation of the Fourth Amendment. The Fourth Amendment to the United States Constitution provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. The Fourth Amendment "requires adherence to judicial processes," and searches conducted without warrants "are per se unreasonable under the Fourth Amendment." *Katz v. United States*, 389 U.S. 347, 357 (1967). If the Government conducts a search when it obtains historical CSLI, then it must obtain a search warrant on a showing of probable cause. *In re Application of the U.S. for an Order Authorizing the Release of Historical Cell-Site Information*, 809 F. Supp. 2d 113, 115 (E.D.N.Y. 2011).

A search is conducted when the Government "violates a person's reasonable expectation of privacy." *United States v. Jones*, 132 S. Ct. 945, 951 (2012) (quoting *Katz*, 389 U.S. at 360). *Katz* established two inquiries for determining whether a person has a reasonable expectation of privacy: (1) whether the

individual has "manifested a subjective expectation of privacy" in what was searched; and (2) whether "society is willing to recognize that expectation as reasonable." *Kyllo v. United States*, 533 U.S. 27, 33 (2001) (citation omitted).

In the Supreme Court's latest articulation of the Fourth Amendment standard, the Court held that when the "Government obtains information by physically intruding on a constitutionally protected area . . . a search has undoubtably occurred." *Jones*, 132 S. Ct. at 951 n.3. The Court explained, however, that the *Katz* standard remains in full force: "[W]e do not make trespass the exclusive test. Situations involving merely the transmission of electronic signals without trespass would *remain* subject to *Katz* analysis." *Id.* at 953-54 (noting that "[i]t may be that [obtaining the same information] through electronic means, without an accompanying trespass is an unconstitutional invasion of privacy, but the present case does not require us to answer that question").

## B. The Exclusionary Remedy and the Good-Faith Exception

Suppression of evidence is a remedy for a Fourth Amendment violation. *Mapp v. Ohio*, 367 U.S. 643, 648-49 (1961)(noting that evidence seized contrary to the Fourth Amendment "shall not be used at all") (citation omitted); *Davis v. United States*, 131 S. Ct. 2419, 2426-27 ("[T]he exclusionary rule is a prudential

doctrine . . . created by this Court to compel respect for the constitutional guaranty.") (citation omitted).

The Supreme Court has held that exclusion is not required "when the police act with an objectively reasonable good-faith belief that their conduct is lawful." *Davis*, 131 S. Ct. at 2427-28 (quoting *United States v. Leon*, 468 U.S. 897, 908-909 (1984)). "When law enforcement officers have acted in objective good faith or their transgressions have been minor," the Court has held that "the magnitude of the benefit conferred on such guilty defendants [by the exclusionary rule] offends basic concepts of the criminal justice system." *Leon*, 468 U.S. at 907-08.

Suppression is not required, for instance, when police reasonably rely on a search warrant issued by a neutral magistrate, even though the warrant is later found defective. *Id.* at 920-921 ("It is the judicial officer's responsibility to determine whether probable cause exists to issue a warrant . . . applying the exclusionary rule in these circumstances could have no deterrent effect on a future Fourth Amendment violation by the officer."); *see also Illinois v. Krull*, 480 U.S. 340, 349-56 (1987)(holding that the good-faith exception applied to law enforcement's reliance on a statute authorizing a warrantless administrative search that was later held unconstitutional).

## C.    The Good-Faith Exception is Dispositive

Because this Court holds that the good-faith exception to
the exclusionary rule applies, *see* discussion *infra*, this Court
need not reach the issue of whether the obtaining of CSLI is a
Fourth Amendment search. *See United States v. Allen*, 625 F.3d
830, 835 (5th Cir. 2010) ("First, we ask whether the seizure
falls within the good-faith exception to the exclusionary rule .
. . [i]f the good-faith exception applies, this court affirms the
district court's decision denying the motion to suppress.");
*United States v. Craig*, 861 F.2d 818, 820 (5th Cir.
1988)("Principles of judicial restraint and precedent dictate
that, in most cases, we should not reach the probable cause issue
if a decision on the admissibility of the evidence under the
good-faith exception of *Leon* will resolve the matter."); *United
States v. Cherna*, 184 F.3d 403, 407 (5th Cir. 1999)("If the good-
faith exception applies, we need not reach the question of
probable cause."); *see also United States v. Webb*, 255 F.3d 890,
904-05 (D.C. Cir. 2001) (holding that the good-faith exception
applied no matter "what may be said of the search warrant
affidavit in this case"); *Ferguson*, 508 F. Supp. 2d at 10
(declining to address a Fourth Amendment challenge after holding
that the good-faith exception applied); *United States v. Koch*,
625 F.3d 470, 476-77 (8th Cir. 2010)("We need not address
[whether there was a Fourth Amendment violation] because we

conclude that the agents had an objective good faith belief . . .
that their search was legal.").

Despite this practice, courts should address the Fourth
Amendment issue when "the resolution of a novel question of law .
. . is necessary to guide future action by law enforcement
officers and magistrates." *Craig*, 861 F.2d at 820-21 (quoting
*Illinois v. Gates*, 462 U.S. 213, 264 (1983)(White, J., concurring
in the judgment). Resolution of the Fourth Amendment issue in
this case is not necessary to guide law enforcement because the
issue is under consideration by the Fifth Circuit. *See In re
Application of the U.S. for Historical Cell Site Data*, 747 F.
Supp. 2d 827, 844-46 (S.D. Tex. 2010), *appeal docketed*, No. 11-
20884 (5th Cir. Dec. 14, 2011) (oral argument held on Oct. 2,
2012).

This Court holds that the good-faith exception applies and
is dispositive of this motion to suppress. By declining to reach
the Fourth Amendment issue this Court is applying the "sound
judicial practice of refusing to decide or address issues whose
resolution is not necessary to dispose of a case, unless there
are compelling reasons to do otherwise." *Craig*, 861 F.2d at 820-
21.

## III. THE GOOD-FAITH EXCEPTION

### A.    The Good-Faith Exception Applies to Orders

The purpose of the exclusionary rule is "to deter future unlawful police conduct," *Krull*, 480 U.S. at 347, not to "cure the violation of a defendant's constitutional rights." *Id.*; *Ferguson*, 508 F. Supp. 2d at 9. In *Leon*, the Supreme Court held that police officers "are entitled to rely on the legal judgment of a neutral magistrate," noting that "an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *Leon*, 468 U.S. at 921; *Ferguson*, 508 F. Supp. 2d at 9. Suppression is not warranted when law enforcement reasonably relies on a neutral magistrate's determination because "[p]enalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *Leon*, 468 U.S. at 921.

In accordance with this focus on police misconduct, the Supreme Court has flexibly applied the good-faith exception embraced in *Leon* to situations beyond law enforcement's reliance on a defective warrant issued by a neutral magistrate. *See, e.g.*, *Davis*, 131 S. Ct. at 2428 (applying the good-faith exception to searches conducted pursuant to law enforcement's reasonable reliance on binding judicial precedent); *Herring v. United States*, 555 U.S. 135, 147-158 (2009) (applying the good-faith

exception to isolated police negligence and errors); *Arizona v. Evans*, 514 U.S. 1, 14-16 (1995) (applying the good-faith exception to an invalid arrest warrant when law enforcement reasonably relied on erroneous information in a database maintained by judicial employees); *Krull*, 480 U.S. at 249-50 (applying the good-faith exception to warrantless searches conducted in reliance on a statute later found unconstitutional).

The principle underlying the good-faith exception is that "the deterrent effect of suppression must be substantial and outweigh any harm to the justice system," *Herring*, 555 U.S. at 147-48, and suppression "should not be applied to deter objectively reasonable law enforcement activity." *Davis*, 131 S. Ct. at 2429. The exclusionary rule pertains only when the police "exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights," and is inapplicable when police act with an "objectively reasonable good-faith belief that their conduct is lawful." *Id*. at 2427.

These principles apply when, as in this case, law enforcement relied on orders from a neutral magistrate. *See, e.g.*, *Ferguson*, 508 F. Supp. 2d at 9-10 (applying the good-faith exception to an magistrate's order pursuant to the SCA); *United States v. Skinner*, No. 09-6497, 2012 U.S. App. LEXIS 16920, at *37-42 (6th Cir. Aug. 14, 2012) (Donald, J. concurring). Accordingly, if the Government establishes by a preponderance of

evidence that the officers' reliance on the magistrate's Orders was objectively reasonable, the Court must deny suppression. *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974) ("[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence."); *United States v. Hurtado*, 905 F.2d 74, 76 (5th Cir. 1990).

**B.    The Detectives' Conduct Was Objectively Reasonable**

The good-faith exception applies to law enforcement's conduct in this case for three reasons: (a) it was objectively reasonable for the Government to believe that obtaining CLSI did not require a search warrant; (b) it was objectively reasonable for law enforcement to rely on the magistrate's Orders and independent determination that obtaining CLSI did not require a search warrant; and it was (c) objectively reasonable for law enforcement to use a state subpoena in this case.

**(a)    It was objectively reasonable for the Government to believe that obtaining CSLI did not require a search warrant.**

The Supreme Court has never decided whether the government must obtain a search warrant before obtaining CSLI, and courts only recently have confronted the issue. A majority of cases hold that a search warrant is not required. *See*, *e.g.*, *In re Application*, 620 F.3d at 306-08; *United States v. Graham*, 846 F. Supp. 2d 384, 404 (D. Md. 2012); *In re Application for an Order*

*Authorizing the Release of Historical Cell-Site Information*, No.
11-MC-0113(JO), 2011 WL 679925, at *2 (E.D.N.Y. Feb. 16, 2011);
*United States v. Dye*, NO. 1:10CR221, 2011 WL 1595255, at *9 (N.D.
Ohio Apr. 27, 2011); *United States v. Velasquez*, No. CR- 08-0730
WHA, 2010 WL 4286276, at *4-6 (N.D. Cal. Oct. 22, 2010); *United
States v. Benford*, No. 2:09 CR 86, 2010 WL 1266507, at *2-3 (N.D.
Ind. Mar. 26, 2010); *Suarez-Blanca*, 2008 WL 4200156, at *8; *In re
Applications of the U.S. for Orders Pursuant to 18 U.S.C. §
2703(d)*, 509 F. Supp. 2d 76, 80-81 (D. Mass. 2007). A minority
hold that a search warrant is required. *See, e.g.*, *In re
Application*, 809 F. Supp. 2d at 126-27; *In re Application of the
U.S. for historical Cell Site Data*, 747 F. Supp. 2d 827, 844-46
(S.D. Tex. 2010), *appeal docketed*, No. 11-20884 (5th Cir. Dec.
14, 2011).

The detectives requested the Orders in 2007, well before
many of the cases addressing CSLI were decided. In 2007, then, it
was objectively reasonable for law enforcement to believe that a
search warrant was not required in order to obtain CSLI. It was
unclear whether a warrant was required, and it was therefore
objectively reasonable for law enforcement to request the Orders.
*See United States v. Brunette*, 256 F.3d 14, 19 (1st Cir.
2001)("[T]he uncertain state of the law at the time made reliance
on the warrant objectively reasonable"); *Suarez-Blanca*, 2008 WL
4200156, at *13 (finding that reliance on a magistrate's order

valid when case law supported the Government's position at the time it applied for the Order). Accordingly, law enforcement did not "exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights," when the officers requested the CSLI pursuant to state subpoenas without applying for a search warrant. *Davis*, 131 S. Ct. at 2427.

> **(b) It was objectively reasonable for the Government to rely on the magistrate's Orders and independent determination that a search warrant was not required.**

Law enforcement's reliance on the magistrate's Orders was objectively reasonable. Because in 2007 it was objectively reasonable for police officers to believe that obtaining CSLI did not have Fourth Amendment implications, it was also objectively reasonable for them to rely on a state judge's Order granting access to the information. When issuing the Orders, the magistrate made the same reasonable assumptions as the detectives; namely, historical CSLI did not require a search warrant under the Fourth Amendment. A magistrate is not "inclined to ignore or subvert the Fourth Amendment," and law enforcement is "not expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *Leon*, 468 U.S. at 916, 921. Accordingly, suppression would not be appropriate, even if it were true that the magistrate should have demanded a search warrant instead of a subpoena, because "[p]enalizing the officer for the magistrate's

error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *Id.* at 921.

To defeat a claim of good-faith, defendant's argument must focus on the illegality of the search under the Fourth Amendment. Defendant must argue that the officers "exhibit[ed] deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights," when they relied on the Order. *Davis*, 131 S. Ct. at 2427. In 2007, it was objectively reasonable to believe that historical CSLI had no Fourth Amendment implications and to rely on a state magistrate's Orders approving their requests. Law enforcement in this case did not disregard the Fourth Amendment; instead, the officers believed in good faith that obtaining CSLI was not a search. Suppression is therefore not appropriate, as the good-faith exception "should not be applied . . . to deter objectively reasonable law enforcement activity." *Leon*, 468 U.S. at 918.

> **(c)  It was objectively reasonable for the Government to use a state subpoena in this case.**

The Court also considers the officers' reliance on the state subpoena procedure in determining whether their conduct was objectively reasonable. A Louisiana Court of Appeals has approved law enforcement's use of a subpoena to obtain CSLI. *Marinello*, 49 So. 3d at 507-510. In *Marinello*, the Court declined to suppress CSLI information obtained by use of subpoena, *Marinello*, 49 So. 3d at 507-510, noting that applying for a pen register under the

Electronic Surveillance Act ("ESA"), La. Rev. Stat. Ann. §

15:1301-15:1316, was an unnecessary step under state law. *Id.* at

510.[35]

Under *Marinello*, any subpoena, even one not meeting the

additional requirements of the ESA, would suffice to obtain CSLI

under state law. The detectives exceeded any state law

requirements for obtaining CSLI when they applied for a subpoena

under the ESA. A subpoena under Louisiana law need only be

supported by "reasonable grounds." La. C. Cr. P. Art. 66; *State*

*v. Bone*, No. 12-KA-34, 2012 WL 3968515, at *10 (La. Ct. App.

Sept. 11, 2012) ("A subpoena duces tecum . . . imposes only a

reasonable grounds standard."). The detectives in this case

provided "specific and articulable facts showing that there are

reasonable grounds to believe" that the information was relevant

and material to an ongoing criminal investigation.[36] Detective

Duzac certified that his investigation "revealed that the said

cellular phone was used by the perpetrator to communicate with

---

[35]    Additionally, it is worth noting that a violation of
state law is insufficient by itself to warrant suppression in
federal court. *United States v. Eastland*, 989 F.2d 760, 765-67
(5th Cir. 1993) (noting that the exclusionary rule was "not
created to discourage . . . violations of state law") (quoting
*United States v. Walker*, 960 F.2d 409, 415 (5th Cir.), *cert.*
*denied*, 506 U.S. 967 (1992)). Instead, a motion to suppress turns
on whether the Government violated the Fourth Amendment to the
United States Constitution. *Walker*, 960 F.2d at 415.

[36]    R. Doc. 118-1; 118-2.

the victim and direct him to a location where he was fatally shot."[37] Detective Wischan certified that he was "conducting a criminal investigation into a Homicide which the perpetrator is believed to have used telephone number 504-201-9982 in the commission of this crime."[38] Accordingly, the detectives' reliance on the state-law subpoena procedure was objectively reasonable and further evidence of their good-faith.

Defendant argues that the detectives' failure to comply with the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701-2710, precludes a finding of good faith. It is true that the detectives failed to refer to the SCA when applying for the Orders. But the detectives and the judge applied the same standard required by the SCA.[39] Historical CSLI has recently been analyzed under § 2703(c) of the SCA as requiring an application for a § 2703(d) court order including "specific and articulable facts showing that there are reasonable grounds to believe" that the information is "relevant and material to an ongoing criminal investigation." § 2703(d); *In re Application*, 620 F.3d at 307-08. While not reciting the statute by name, the detectives certified that the information sought was "relevant and material to an

---

[37] R. Doc. 118-1 at 2.

[38] R. Doc. 118-2 at 2.

[39] R. Doc. 118-1; 118-2.

ongoing criminal investigation"[40] because "perpetrator is believed to have the telephone number in the commission of [the homicide]"[41] and "investigation has revealed that the said cellular phone was used by the perpetrator to communicate with the victim and direct him to a location where he was fatally shot."[42] By granting the Orders, the magistrate found "that the [a]pplicant has offered specific and articulable facts showing that there are reasonable grounds to believe that the subscriber information . . . is relevant and material to an ongoing criminal investigation."[43] Accordingly, while not mentioning § 2703(d) explicitly, both law enforcement and the magistrate applied an identical standard to § 2703(d). The detectives' failure to

---

[40]    R. Doc. 118-1; 118-2.

[41]    R. Doc. 118-1; 118-2 at 2.

[42]    R. Doc. 118-1.

[43]    R. Doc. 118-1.

recite the SCA by name does not preclude a finding of good faith.[44]

The Supreme Court has "repeatedly rejected efforts to expand the focus of the exclusionary rule beyond deterrence of culpable police conduct." *Davis*, 131 S. Ct. at 2432. In this case, the detectives' actions were objectively reasonable when they acquired the historical CSLI. When the detectives requested the CSLI, they had enough evidence to show probable cause to obtain an arrest warrant for Mr. Hart. When requesting the CSLI, it was reasonable for them to believe that the Fourth Amendment was not implicated. It was also reasonable for them to apply for a state subpoena, and it was reasonable for them to rely on the magistrate's Orders granting them access to the information. The officers who obtained the CSLI did not violate Hardrick's Fourth Amendment rights "deliberately, recklessly or with gross negligence." *Id.* at 2428. This "absence of police culpability"

---

[44]    Additionally, it is well settled that there is no suppression remedy for violations of the SCA. *See* 18 U.S.C. § 2707(providing for civil damages and administrative discipline); 18 U.S.C. § 2708 (providing that the remedies outlined are the "only judicial remedies and sanctions"); *see also United States v. Clenney*, 631 F.3d 658, 667 (4th Cir. 2011) ("Congress has made clear that it did not intend to suppress evidence gathered as a result of § 2703(C) violations."); *United States v. Perrine*, 518 F.3d 1196, 1201-02 (10th Cir. 2008); *United States v. Smith*, 155 F.3d 1051, 1059 (9th Cir. 1998) (noting the lack of suppression remedy for violating the SCA); *United States v. Ferguson*, 508 F. Supp. 2d 7, 10 (D.D.C. 2007); *United States v. Qing Li*, No. 07CR2915JM, 2008 WL 789899, at *3 (S.D. Cal. Mar. 20, 2008).

defeats defendant's motion to suppress. *Id.* The good-faith exception applies in this case.

**IV.  CONCLUSION**

For the foregoing reasons, the Court DENIES defendant's motion to suppress.


New Orleans, Louisiana, this 15th day of October, 2012.


<u>                *Sarah Vance*                </u>
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE