UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 10-202 |
| STEVEN EARL HARDRICK | SECTION "R" |

**ORDER AND REASONS**

Before the Court is defendant Steven Earl Hardrick's motion for compassionate release.[1] The government opposes the motion.[2] Because the defendant has not shown that he has exhausted his administrative remedies, and because he does not meet the requirements for compassionate release, the Court denies the motion.

**I.  BACKGROUND**

On December 20, 2012, the defendant pleaded guilty to (1) one count of conspiracy to distribute and possess with the intent to distribute quantities of cocaine base and cocaine hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C)-(D), and 846, (2) two counts of causing a death through the use of a firearm, in violation of 18 U.S.C. §§ 924(j) and 2; (3) one

---

[1]  R. Doc. 253.
[2]  R. Doc. 255.

count of carjacking resulting in deaths, in violation of 18 U.S.C. § 2119(3); and (4) one count of witness tampering resulting in death, in violation of 18 U.S.C. § 1512(a)(1)(C) and 1512(a)(3)(A).[3]

According to the factual basis that Hardrick signed, he was involved in killing five people in a span of less than a month in the fall of 2007.[4] On October 1, Hardrick and his associates killed Dwayne Landry, following a dispute over Landry's handgun's extended magazine, which Hardrick had admitted to stealing.[5] On October 13, Hardrick and his associates forced their way into the home of Thelonius Dukes, a police officer, at which point they robbed Dukes and his wife at gunpoint, and demanded to see Dukes's wife's private parts. Hardrick and associates ultimately fired on Dukes and his wife, killing Dukes and striking his wife in the foot.[6] On October 24, following a failed drug deal with Brett Jacobs and David Alford, Hardrick forced the two men out of their car, and drove them to a remote area of New Orleans East, where he ordered them onto their knees, and shot them both in the back of the head several times.[7] Hardrick then drove to the nearby home of Howard Pickens, a man who had driven by the scene of the Jacobs

---

[3]   R. Doc. 218 at 1-2; *see also* R. Doc. 217.
[4]   R. Doc. 219 at 5-12.
[5]   *Id.* at 5-7.
[6]   *Id.* at 8-10.
[7]   *Id.* at 10-11.

and Alford killing on his way home from work. Not wanting to leave any witnesses to the murders, Hardrick shot Pickens twice in the head, killing him.[8] The factual basis also indicates that Hardrick participated in a drug conspiracy involving significant quantities of crack cocaine, cocaine hydrochloride, and marijuana.[9]

On March 20, 2013, this Court sentenced Hardrick to a term of thirty years of imprisonment, to be followed by five years of supervised release.[10] Defendant Hardrick has served approximately eight and a half years of his prison sentence. He is currently housed at the Williamsburg Federal Correctional Institution in Salters, South Carolina, with a projected release date of October 13, 2038.[11]

On February 18, 2021, defendant moved for compassionate release.[12] He represents that he is legally blind and obese, suffers from anxiety, and has been exposed to tuberculosis.[13] He contends that these conditions put him at special risk of contracting and becoming seriously ill from COVID-19, and

---

[8] *Id.* at 11.
[9] R. Doc. 219 at 1-5.
[10] R. Doc. 229 at 3-4.
[11] *See* Fed. Bureau of Prisons, *Find an Inmate* (2021), https://www.bop.gov/inmateloc.
[12] R. Doc. 253.
[13] *Id.* at 1-2.

3

that this risk warrants his release.[14] Defendant also submits a letter of support with his motion.[15] The Government opposes defendant's motion, arguing that he has not exhausted his administrative remedies,[16] that he poses a danger to the community,[17] and that he fails to present "extraordinary and compelling reasons" warranting compassionate release.[18] The Government further argues that the sentencing factors in 18 U.S.C. § 3553(a) weigh against defendant's release.[19]

The Court considers defendant's motion below.

## II.   DISCUSSION

As a threshold matter, Hardrick has not shown that he has satisfied the exhaustion requirement for compassionate release. The statute provides that a district court may grant a defendant's motion for compassionate release only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after 30 days have passed "from the receipt of such a

---

[14]   *Id.* at 2-3.
[15]   R. Doc. 253-2.
[16]   R. Doc. 255 at 7-9.
[17]   *Id.* at 19-23.
[18]   *Id.* at 9-19.
[19]   *Id.* at 23-24.

request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The Fifth Circuit has made clear that this exhaustion requirement is a "mandatory claim-processing rule" that the Court "*must* enforce." *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020).

Hardrick represents that he has "sent several request[s] to the Warden," requesting compassionate release, but never heard back.[20] However, he submits no documentation or other proof of any correspondence with the warden or other prison official. Further, the Government represents that it spoke with the Bureau of Prisons ("BOP"), and that BOP indicated that it had not received a request from Hardrick.[21] Defendant's failure to show that he has satisfied the statutory exhaustion requirement is sufficient grounds to deny his motion. *See United States v. Vedros*, No. 14-237, 2020 WL 2838589, at *2 (E.D. La. June 1, 2020) (dismissing a motion for compassionate release where the defendant alleged that he submitted a request to the warden but provided no documentation to that effect, and BOP had no record of a request); *see also Franco*, 973 F.3d at 468.

---

[20] R. Doc. 253-1.
[21] R. Doc. 255 at 7.

5

Even if defendant had properly shown that he exhausted his administrative remedies before pursuing release in this Court, he has failed to otherwise show that he is entitled to compassionate release. Upon a prisoner's motion, a court may, after considering the sentencing factors set out in 18 U.S.C. § 3553(a), grant compassionate release if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021) (holding that, in evaluating a motion by an inmate, rather than the Bureau of Prisons, "[t]he district court . . . is bound only by § 3582(c)(1)(A)(i) and . . . the sentencing factors in § 3553(a)"). Hardrick's request for compassionate release fails to meet this standard.

Here, the § 3553(a) factors, specifically the "need for the sentence imposed . . . to reflect the seriousness of the offense," 18 U.S.C. § 3553(a), militate heavily against Hardrick's release. Defendant was involved in killing five people over the course of one month, including a police officer and a witness bystander. He has served only eight and a half years of his thirty-year sentence. Hardrick's sentence would not reflect the seriousness of his five murders if he were released after serving less than one third of his term of imprisonment. Granting his motion would thus not be consistent with the sentencing factors in § 3553(a). *See Shkambi*, 993 F.3d at 393.

Furthermore, defendant has failed to demonstrate that there are "extraordinary and compelling reasons" meriting his release. 18 U.S.C. § 3582(c)(1)(A)(i). In support of his motion, defendant relies on his physical and mental health conditions, as well as the risks posed by the COVID-19 pandemic.[22] Specifically, defendant cites his vision problems, anxiety, obesity, and a 2007 exposure to tuberculosis.[23]

The Court finds that Hardrick's four cited conditions, combined with his generalized fear of COVID-19, do not constitute "extraordinary [or] compelling reasons" warranting compassionate release. The defendant is only 36 years old,[24] and is generally healthy. Further, courts have denied compassionate release to defendants older than Hardrick, who cited the same or similar conditions as him. *See, e.g.*, *United States v. Spikes*, No. 08-201, 2020 WL 6044614, at *5 (E.D. Pa. Oct. 13, 2020) (denying compassionate release to a 48-year-old defendant who feared COVID-19 because of his latent tuberculosis); *United States v. Rankin*, No. 06-41, 2020 WL 6720979, at *1 (S.D. Miss. Nov. 16, 2020) (denying compassionate release to a 47-year-old defendant who feared COVID-19 because of anxiety, morbid obesity, and other conditions); *cf. United States v. Brown*, No. 04-

---

[22] R. Doc. 253 at 1-2.
[23] *Id.*
[24] *See* R. Doc. 253-4 at 1 (indicating a date of birth of June 10, 1985).

7

06, 2020 WL 3035916, at *3 (M.D. Tenn. June 4, 2020) (denying compassionate release to a 67-year-old defendant who was blind in one eye).

And to the extent that Hardrick raises a generalized fear of COVID-19, such a reason does not warrant compassionate release. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."); *United States v. Marco Perez-Serrano*, No. 13-2, 2020 WL 2754914, at *2 (S.D. Miss. May 27, 2020) ("A generalized fear of contracting COVID-19 does not justify compassionate release."). Moreover, as the Fifth Circuit has noted, courts that have granted compassionate release on COVID-related grounds "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns." *United States v. Thompson*, 984 F.3d 431, 434-35 (5th Cir. 2021). As discussed, Hardrick has not yet served even one third of his sentence.

## III. CONCLUSION

For the foregoing reasons, the Court DENIES defendant's motion.

New Orleans, Louisiana, this __29th__ day of September, 2021.

*Sarah Vance*
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE